Jason K. Feldman SBN 213386
Ian Wallach, SBN 237849
FELDMAN & WALLACH
606 Venice Blvd., Suite C
Venice, CA 90291
Telephone: (310) 577-2001
Fax: (310) 564-2004
jason@feldmanwallach.com
ian@feldmanwallach.com

FILED
12 OCT 10 PM 4:20
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

Attorneys for Plaintiff,
RON FEKRAT

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

RON FEKRAT, an individual,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

THE GEO GROUP, INC., AND

JOHN DOES 1 – 9.

    Defendants.

CV12-8705 MMM (PJWx)

Civil No.

**COMPLAINT FOR MONEY DAMAGES**
(Federal Tort Claims Act)
(Negligence)

**JURY TRIAL DEMANDED**

Judge:
Crtrm:

Plaintiff Ron Fekrat, an individual (hereinafter referred to as "Plaintiff"), by and through his attorneys of record, Feldman & Wallach, by Jason Feldman, Esq., for his complaint for money damages against the UNITED STATES OF AMERICA, THE GEO GROUP, INC., AND JOHN DOES 1-9 alleges:

## I.
## The Parties:

1. Plaintiff is a resident and citizen of the State of California, County of Los Angeles. Plaintiff brings this complaint for money damages for personal injuries suffered as a result of the negligent and wrongful acts and omissions of the officers, agents and employees of the defendant UNITED STATES OF

Complaint for Money Damages (FTCA)

AMERICA, employed by the Federal Bureau of Prisons, THE GEO GROUP, INC., and JOHN DOES 1-9.

2. Defendant UNITED STATES OF AMERICA operates and controls the Federal Bureau of Prisons (sometimes hereinafter denoted as the "BOP"), which is charged with maintaining custody of sentenced federal prisoners in its many correctional facilities throughout the United States, and whose officers, agents and/or employees negligently and recklessly exposed the Plaintiff to the potentially deadly disease known as Coccidioidomycosis (also known as "Valley Fever", "San Joaquin Valley Fever", and "Cocci") at its prison facility in Kern County, California, known as Taft Correctional Institution (or "Taft C.I.").

3. Defendant THE GEO GROUP, INC. is a corporation licensed to practice in the State of California that operates the Taft C.I. and whose officers, agents and/or employees negligently and recklessly exposed the Plaintiff to the potentially deadly disease known as Coccidioidomycosis at Taft C.I.

4. Defendants JOHN DOES 1-9 are corporations or individuals who – per contract with Defendant UNITED STATES OF AMERICA - have operated Taft, C.I. at any time relevant to this Complaint. The identities of these John Doe defendants are not presently known to Defendant as this information is in the exclusive control of Defendant THE GEO GROUP, INC. and Defendant UNITED STATES OF AMERICA, and include, but are not limited to, other corporate entities owned by, under the control of, controlled by, or otherwise associated with Defendant THE GEO GROUP, INC.

//

//

## II.

## Jurisdiction:

5. This action arises from, and this Court has jurisdiction over this action by virtue of the Federal Tort Claims Act, 28 U. S. Code §§ 1346(b), 2671, et seq. The Plaintiff has been injured by the negligent or wrongful acts and omissions of the officers, agents and/or employees of the Defendant UNITED STATES OF AMERICA, acting in the course and scope of their employment.

6. This Court also has jurisdiction over the claims against Defendant THE GEO GROUP, INC. and Defendants JOHN DOES 1-9 as such claims are inextricably-intertwined with and ancillary and, in large part, arise from the same set of operative facts to Plaintiff's claims against Defendant UNITED STATES OF AMERICA and, as such, can only be resolved in Federal Court.

7. The acts and omissions of which Plaintiff complains took place in the State of California. Accordingly, the law of the State of California controls this action with respect to liability and damages. 28 U. S. Code §§ 1346(b)(1) and 2674.

8. This suit is timely filed.

## III.

## Venue:

9. Venue is proper in the Central District of California, because the Plaintiff resides in this district. 28 U. S. Code §§ 1402(b) and 1391(e)(3).

//
//
//

## IV.

### The Facts Giving Rise to The Complaint:

10. Coccidioidomycosis (commonly known as "Valley Fever" or "San Joaquin Valley Fever" or simply as "cocci") has long been known as a serious infectious disease which is contracted by the inhalation of an airborne fungus, Coccidioides immitis, which is endemic in the soil of various areas of the Southwest. Nowhere is it more prevalent than in Kern County in the San Joaquin Valley of California.

11. In June of 1994, the U. S. Centers for Disease Control and Prevention (commonly referred to as the "CDC"), in its publication called the Morbidity and Mortality Weekly Report (MMWR) issued an article prepared by a group of physicians and scientists preeminent in the field of infectious disease, entitled "Coccidioidomycosis -- California, 1991-1993." The article reported on the devastating impact of Valley Fever in California, as well as the fact that in the years 1991 through 1993, 70% of the reported cases of coccidiodomycosis in California arose from Kern County, in the San Joaquin Valley. [See full article at: http://www.cdc.gov/mmwr/preview/mmwrhtml/00031453.htm]

12. In September of 1996 Doctors Theo N. Kirkland and Joshua Fierer, both of the University of California, San Diego, School of Medicine, published an article in Emerging Infectious Diseases (another publication of the CDC), entitled "Coccidioidomycosis: A Reemerging Infectious Disease." In this article Doctors Kirkland and Fierer comment on the Valley Fever epidemic of 1991-1993 reported above, and state that: "Kern County, in the San Joaquin Valley, California, is one of the most highly coccidioidomycosis-endemic regions."

<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>

They also point out later in the article that:

> Simple environmental measures, such as planting grass or paving roads in highly populated areas, decrease the amount of airborne dust and lower the risk for coccidioidomycosis. These measures do not necessarily eradicate C[occidioides] immitus from the soil but lower the risk for airborne dispersion of the organism. At present, no practical method exists for eliminating C[occidioides] immitus from the soil.

Drs. Kirkland and Fierer also discuss in their article the efforts to develop a vaccine to prevent Coccidioidomycosis, which as of the date of the article had not been successful. [See the full article cited above at: http://www.cdc.gov/ncidod/eid/vol2no3/kirkland.htm].

13. Preventative measures that can effectively combat the spread of cocci have been known of in the medical and other communities since the 1940s. Such measures were discussed in a 1946 article "article EFFECT OF SEASON AND DUST CONTROL ON COCCIDIOIDOMYCOSIS, JAMA" 132:14 by Charles E. Smith, M.d.; Rodney R. Beard, M.D.; Major H. G. Rosenberger; and Major E. G. Whiting. These measures include watering down dusty areas, planting grass or shrubs over dusty areas, and keeping individuals inside during windy conditions. These measures have been shown to reduce the spread of infection by ½ to 2/3rds.

14. The measures identified above have been commonly employed in prisons and other facilities in the San Joaquin Valley, near Taft C.I., since the mid-2000s, and are still being employed today.

15. In 2007, Dwight Winslow, MD submitted recommendations to Coccidioidomycosis mitigation in prisons in the hyperendemic areas in California. The California Department of Corrections and Rehabilitation

(CDCR) and the California Department of Health Services (CDHS) implemented several actions designed to reduce inmate and staff exposure to Coccidioidomycosis and mitigate its harmful effects. The recommendations included deferring any new construction that will lead to additional prisoners being housed in hyperendemic areas and providing an indoor recreation area for inmates to use during high wind/dust events; and excluding certain inmates from being housed in a facility that is in the hyperendemic area including those infected with HIV. These measures have not been implemented at Taft C.I. [See full article at: http://www.cphcs.ca.gov/docs/resources/RecommendationsForValleyFever_0607.pdf]

16. The Defendants, and each of them, were on notice of the risk of harm from cocci and failed to take actions to protect Plaintiff from that harm.

17. The Defendants, and each of them, failed to provide and maintain safe and habitable housing for inmates at Taft C.I. (including Plaintiff).

18. No measures were implemented at Taft C.I. by Defendants to protect Taft C.I. inmates from infection at the times relevant to this Complaint.

19. Had the measures above been implemented at Taft C.I. at the times relevant to this Complaint, there is a ½ to 2/3rd chance that Plaintiff would not have acquired Valley Fever.

20. At no time pertinent to this action was there an effective human vaccine available to prevent the disease Coccidioidomycosis, and none exists today. And once contracted, there is no iatrogenic cure for the disease.

21. It is generally accepted that less than 5% of Coccidioidomycosis infections disseminate and cause miliary disease, bone and joint infections (including

6
Complaint for Money Damages

osteomyelitis), skin disease, soft tissue abscesses, and meningitis. However, it is well known that disseminated Coccidioidomycosis is progressive, painful, and debilitating, and that it is uniformly fatal once it progresses to meningitis, if left untreated. Surgical excision of tissue and bone is the only medical response for some extrapulmonary infections of Coccidioidomycosis.

22. Certain triazole compounds, including Fluconazole (400 mg/day), have been found to be effective in treating most presentations of Coccidioidomycosis; but the drug must be taken daily, and due to previously experienced high relapse rates when azole therapy is stopped, lifelong treatment with Fluconazole is recommended. And Fluconazole has side effects that are very difficult for many to tolerate.

23. Even though there are more occurrences at Taft C.I. than all other federal prisons combined, preventative measures – commonly employed in other penal institutions in the area -- have yet to be implemented at Taft C.I.

24. Around 2007, Taft C.I. began to primarily house inmates awaiting deportation – resulting in the export of many individuals who had become infected with Cocci.

25. Defendants provide no health-care services that assist those infected with Cocci while incarcerated at Taft, C.I. after their departure or release from custody, leaving these individuals to fend for themselves.

26. In June of 2002, federal inmate Kevin Walker filed a claim against the United States for damages under the Federal Tort Claims Act (as well as Bivens claims against various entities and individuals), alleging negligence on the part of the Government for having transferred him in December 1999 to Taft C.I., a facility that was constructed by the United States with knowledge that the soil

upon which it was built was contaminated with fungal spores that are known to cause Valley Fever. Walker v. United States, 2007 WL 1577687, Case No. 1:02-cv-05801-AWI (E.D. Cal. 2007) (Ishii, D.J.), at *4. Walker also alleged that the Government knew about the presence of the fungal spore when it began transferring federal inmates to Taft C.I. in late 1997, but it did nothing to prevent inmates from being exposed to Valley Fever. Walker v. United States, 2008 WL 2074475 (E.D. Cal. 2008) (Austin, M.J.), at *2. Walker alleged that the Bureau of Prisons ("BOP") vetoed efforts by the private contractor operating the facility to plant grass to mitigate the dusty conditions. This case was ultimately dismissed but put the defendants in this action on notice of the likelihood of exposure to cocci infection that was imposed on inmates at Taft, C.I.

27. In 2009, a similar action to this was commenced alleging that The United States of America failed to adequately protect one inmate from acquiring valley fever, which was ultimately resolved (*Panah v. United States of America*, CV-096535) ("the CV-096535 Action"). This action provided further notice to the defendants of the risk of cocci infection at Taft, C.I.. Still no preventative measures were implemented.

28. In the CV-096535 Action, the Court determined that Plaintiff's asserted claims of negligence against Defendant United States of America were not barred by the discretionary function exception to the Federal Tort Claims Act.

29. In January 2004 the BOP itself, i.e., the Chief of the BOP's Office of Quality Management, in Washington, D.C., through the BOP's Medical Director, issued a system-wide memorandum for all BOP Health Services Staff, which included a "Risk Management Alert" for Valley Fever. The alert described the

disease as follows: "Valley Fever is another name for the sometimes deadly infection coccidioidomycosis." (Emphasis added.) The risk management alert goes on to explain [inexactly] that: "It is called valley fever because the organism that causes it is commonly found in the soil of the southwestern United States, Mexico and parts of Central and South America." (Actually, the term arose from the high prevalence of the disease in the San Joaquin Valley of California.) The BOP alert includes the recommendation that: "Persons at risk for valley fever should avoid exposure to dust and dry soil in areas where valley fever is common."

30. Epidemiological studies have established that individuals of certain races are at higher risk for developing the disseminated form of Coccidioidomycosis, particularly African-Americans and Filipinos, for whom the risk is greatly increased. This is potentially the result of the absence of a "host-immunity" – a capacity to become infected by not produce symptoms – that is rarely present in individuals that have never previously been exposed to the area. Tests to determine the presence of this "host-immunity" were available at all times relevant to this Complaint, but never made available to anyone arriving at Taft C.I. to determine their potential risk to exposure.

31. While certain races mentioned above are known to be at substantially higher risk of contracting the worst form of Valley Fever, i.e., disseminated Coccidioidomycosis, there is no known medical standard or test available for determining whether any member of the general population (not previously exposed to Coccidioidomycosis and immunized by prior infection) may or may not be susceptible to contracting this worst form of the disease, which some have described as being worse than cancer.

32. Based on the filing and litigations of the Walker and Panah cases, mentioned above, and the BOP's own headquarters memorandum in January 2004, alerting its medical staff system wide as to the danger of the disease Coccidioidomycosis (Valley Fever), the Defendants had indisputable knowledge that this disease was potentially deadly, and that any federal inmate assigned to Taft C.I. was in danger of contracting the disease due to its physical location in the San Joaquin Valley amidst desert and agricultural terrain that generated the dust-borne spores of Coccidioides immitis. The only prudent courses open to the Defendants were: (1) provide greater protection, housing, or removal to any inmate at Taft C.I. who did not have a positive coccidioidin skin test indicating immunity; (2) shut down the facility as too dangerous for human habitation; or (3) implement the common and available preventative measures to protect all non-immune inmates from exposure to the dust-borne disease. Otherwise, the incarceration of human beings at Taft C.I. was the equivalent of conducting a human medical experiment on the inmates, without their consent. While the great percentage of inmates might be expected to survive the disease, for an unacceptable percentage of inmates, being housed at Taft C.I. was a potential death sentence.

33. On March 5, 2009, Plaintiff, in the UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles), in case number 2:08-cr-01028-PA-2, was convicted of 18 U.S.A. 371 (Conspiracy); 18 U.S.A. 1029 (a)(2) (Fraudulent use of access device).

34. Plaintiff was sentenced to serve 3 years in federal prison. Upon entering federal custody, Plaintiff had not previously been exposed to the disease Coccidioidomycosis. Plaintiff did not travel to the San Joaquin Valley for

business or pleasure at any time prior to his assignment to Taft C.I. by the BOP, in 2010.

35. Prior to his assignment to Taft C.I., Plaintiff was in reasonably good health and was free of Coccidiomycosis.

36. While the Plaintiff was incarcerated at Taft C.I., the defendants failed to take any particular measures to protect the inmates at Taft from inhaling the naturally occurring airborne dust generated by the desert winds and nearby agricultural activities. Plaintiff was not provided any special protective breathing masks or other devices, and to his knowledge there was no special air conditioning equipment employed by the facility to filter out the dust occurring in the local environment. Nor was there any prohibition of outdoor activities during dusty conditions. Nor was anything done to keep the dust that forms that basis of the facility covered with grass or shrubs. Nor was that dust ever watered down or oiled down. Nor were inmates kept inside during windy conditions. As a result of these errors, Plaintiff contracted Cocci.

37. Plaintiff was diagnosed with Valley Fever on or about October 19, 2010. Plaintiff's symptoms included a high temperature, constant coughing, loss of appetite, night sweats and chills, open sores on his body, weakness and fatigue; and other symptoms. Plaintiff's very high Complement Fixation indicated a high likelihood of dissemination.

38. Plaintiff arrived at Taft CI on or about June 1, 2010 and was transferred to another prison on or about November 11, 2010. Plaintiff was released from federal custody on or about September 14, 2012. Plaintiff continues to require medical services related to his valley fever infection.

39. As a result of Plaintiff's valley fever infection, Plaintiff will require lifetime medical supervision, treatment, and in all likelihood, medication.

40. It is anticipated that Plaintiff's future medical expenses to care for this infection can range from $180,000.00 to several million dollars.

41. There is no cure presently available for Plaintiff's medical condition.

42. As a result of all his infection, Plaintiff's quality of life and enjoyment of life has severely deteriorated. His life expectancy may have been decreased considerably. Plaintiff experiences severe physical pain and suffering from the various symptoms of the disease known as San Joaquin Valley Fever, when he first contracted the illness; and continues to experience physical discomfort over time, with exacerbated episodes of illness, as mentioned above. He will undoubtedly continue to experience similar pain and suffering in the future.

43. Further, Plaintiff must now live with the anxiety and dread of the potential that he may have the disseminated form of Coccidioidomycosis, which could cause an agonizing course of progressive sickness and premature death, should he for any reason be unable to continue his daily regimen of 400 mg of Fluconazole to suppress the disease's natural course, and maintain regular access to medical professionals familiar with the disease, who can continue the careful monitoring necessary to keep his Valley Fever in check. He will never be "cured" of Coccidioidomycosis. The best he can hope for is an uneasy truce with the disease, with the help of prescription drugs and knowledgeable doctors. Plaintiff further lacks any financial means to arrange for and provide such treatment.

//

//

## V.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT UNITED STATES OF AMERICA

(Negligent or Wrongful Act or Omission)

(Failure to Provide Inmate with Safe and Habitable Prison)

44. Plaintiff hereby incorporates by reference paragraphs 1 through 43, above, as if set forth herein in full.

45. At all times pertinent to this action, Defendant UNITED STATES OF AMERICA, through its agents, officers and employees acting within the scope of their offices and employment, had a nondelegable regulatory and common law duty to exercise reasonable care to provide the Plaintiff with a safe and habitable place of incarceration, where he could live and work without contracting a potentially fatal disease, despite his best efforts to pursue a healthy life style and avoid activities that might risk his health.

46. At all times pertinent to this action, Defendant UNITED STATES OF AMERICA, through its agents, officers and employees acting within the scope of their offices and employment, negligently and recklessly failed to comply with the aforementioned duty, by instead incarcerating the Plaintiff at Taft, C.I., which it knew to be located on a site regularly immersed in dust containing the airborne spores of Coccidioides immitis, known to be the cause of the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever), and failing to implement or arrange for the implementation of preventative measures that could have protected Plaintiff from infection.

47. As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the injuries and damages herein described.

## VI.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT THE UNITED STATES OF AMERICA

(Negligent or Wrongful Act or Omission)

(Premises Liability: Failure to Operate and Maintain Prison Facility in Safe and Habitable Condition)

48. Plaintiff hereby incorporates by reference paragraphs 1 through 47, above, as if set forth herein in full.

49. At all times pertinent to this action, Defendant United States of America, through its agents, officers and employees acting within the scope of their offices and employment, had a nondelegable regulatory and common law duty to exercise reasonable care to operate and maintain the Taft C.I. in such a manner as to ensure that it was reasonably safe and habitable for human beings, and that it harbored no latent defects that constituted a dangerous condition and an unreasonable risk of harm to the health and safety of the federal inmates assigned to said prison, including the Plaintiff.

50. At all times pertinent to this action, the Defendant, UNITED STATES OF AMERICA through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully failed to take steps to either make the aforementioned dangerous condition of Taft C.I. safe or adequately warn Plaintiff of the dangerous condition, to wit, the prison's location on a site regularly immersed in airborne dust containing the airborne

spores of Coccidioides immitis, all of which caused Plaintiff to contract the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever), as alleged above, and to suffer the injuries and damages herein described.

## VII.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT UNITED STATES OF AMERICA

(Breach of duty of care under 18 USC Section 4042(a))

51. Plaintiff hereby incorporates by reference paragraphs 1 through 50, above, as if set forth herein in full.

52. At all times pertinent to this action, the Defendant UNITED STATES OF failed to provide suitable quarters and provide for the protection, safekeeping, care, and subsistence of Plaintiff.

53. All of which caused Plaintiff to contract the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever), as alleged above, and to suffer the injuries and damages herein described.

## VIII.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT THE GEO GROUP, INC AND THE JOHN DOE DEFENDANTS

(Negligent or Wrongful Act or Omission by GEO Group, Inc.)

(Failure to Provide Inmate with Safe and Habitable Prison)

54. Plaintiff hereby incorporates by reference paragraphs 1 through 53, above, as if set forth herein in full.

55. At all times pertinent to this action, Defendants THE GEO GROUP, INC. AND THE JOHN DOE DEFENDANTS, through their agents, officers and employees acting within the scope of their offices and employment, had a nondelegable regulatory and common law duty to exercise reasonable care to provide the Plaintiff with a safe and habitable place of incarceration, where he could live and work without contracting a potentially fatal disease, despite his best efforts to pursue a healthy life style and avoid activities that might risk his health.

56. At all times pertinent to this action, Defendants THE GEO GROUP, INC. AND THE JOHN DOE DEFENDANTS, through its agents, officers and employees acting within the scope of their offices and employment, negligently and recklessly failed to comply with the aforementioned duty, by instead incarcerating the Plaintiff at Taft, C.I., which it knew to be located on a site regularly immersed in dust containing the airborne spores of Coccidioides immitis, known to be the cause of the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever), and by failing to implement preventative measures that could have protected Plaintiff from the infection Plaintiff carries today.

57. As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the injuries and damages herein described.

58. Defendant's aforementioned conduct was willful and wanton and in reckless disregard of the safety and welfare of Plaintiff justifying punitive and exemplary damages in an amount to be proven at trial.

55. At all times pertinent to this action, Defendants THE GEO GROUP, INC. AND THE JOHN DOE DEFENDANTS, through their agents, officers and employees acting within the scope of their offices and employment, had a nondelegable regulatory and common law duty to exercise reasonable care to provide the Plaintiff with a safe and habitable place of incarceration, where he could live and work without contracting a potentially fatal disease, despite his best efforts to pursue a healthy life style and avoid activities that might risk his health.

56. At all times pertinent to this action, Defendants THE GEO GROUP, INC. AND THE JOHN DOE DEFENDANTS, through its agents, officers and employees acting within the scope of their offices and employment, negligently and recklessly failed to comply with the aforementioned duty, by instead incarcerating the Plaintiff at Taft, C.I., which it knew to be located on a site regularly immersed in dust containing the airborne spores of Coccidioides immitis, known to be the cause of the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever), and by failing to implement preventative measures that could have protected Plaintiff from the infection Plaintiff carries today.

57. As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the injuries and damages herein described.

58. Defendant's aforementioned conduct was willful and wanton and in reckless disregard of the safety and welfare of Plaintiff justifying punitive and exemplary damages in an amount to be proven at trial.

## IX.

## FIFTH CAUSE OF ACTION DEFENDANT

## THE GEO GROUP, INC AND THE JOHN DOE DEFENDANTS

(Negligent or Wrongful Act or Omission by GEO Group, Inc.)

(Premises Liability: Failure to Operate and Maintain Prison Facility in Safe and Habitable Condition)

59. Plaintiff hereby incorporates by reference paragraphs 1 through 58, above, as if set forth herein in full.

60. At all times pertinent to this action, the Defendant THE GEO GROUP INC. AND THE JOHN DOE DEFENDANTS, through their agents, officers and employees acting within the scope of their offices and employment, had a nondelegable regulatory and common law duty to exercise reasonable care to operate and maintain Taft C.I. in such a manner as to ensure that it was reasonably safe and habitable for human beings, and that it harbored no latent defects that constituted a dangerous condition and an unreasonable risk of harm to the health and safety of the federal inmates assigned to said prison, including the Plaintiff.

61. At all times pertinent to this action, the Defendant THE GEO GROUP INC. AND THE JOHN DOE DEFENDANTS, through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully failed to take steps to either make the aforementioned dangerous condition of Taft C.I. safe or adequately warn Plaintiff of the dangerous condition, to wit, the prison's location on a site regularly immersed in airborne dust containing the airborne spores of Coccidioides immitis, all of which caused Plaintiff to contract the incurable and potentially deadly infectious

disease Coccidioidomycosis, as alleged above, and to suffer the injuries and damages herein described.

62. Defendant's aforementioned conduct was willful and wanton and in reckless disregard of the safety and welfare of Plaintiff justifying punitive and exemplary damages in an amount to be proven at trial.

## X.

## DAMAGES

63. As a direct and proximate result of the aforesaid negligent or wrongful acts or omissions by one or more of the defendants, Plaintiff was hurt and injured in his health, strength, and activity, sustaining injury to his person, all of which has caused and continues to cause Plaintiff substantial physical pain and suffering and debilitation, as well as severe worry, anxiety and emotional distress, as to the potential future course of his incurable disease.

64. As a further proximate result of the aforesaid negligent or wrongful acts or omissions by one or more of the defendants, Plaintiff has been damaged, in that he has incurred, and will continue to incur, medical and related expenses.

65. As a further proximate result of the aforesaid negligent or wrongful acts or omissions, Plaintiff has been damaged, in that, once released, Plaintiff will, from time to time, be unable to work due to temporary total work disability due to illness, because of his physical injury (the contracting of the disease Coccidioidomycosis). Plaintiff also faces a shortened work life expectancy, due to the continuing pain and discomfort, weakness and fatigue and pulmonary symptoms caused by the disease Coccidioidomycosis, of which he will never be cured, despite the diligent pursuit of appropriate medical

treatment for said condition. Premature death due to the disease is likewise possible, should it disseminate and progress to meningitis.

## XI.

## JURY TRIAL DEMAND AS TO CLAIMS AGAINST DEFENDANT THE GEO GROUP, INC. AND THE JOHN DOE DEFENDANTS

In the event that Defendant UNITED STATES OF AMERICA is no longer a party to this action at the time of trial or to the extent that the claims against defendant UNITED STATES OF AMERICA are bifurcated or otherwise separated from the claims against DEFENDANT THE GEO GROUP, INC. or the JOHN DOE DEFENDANTS, Plaintiff herein demands a trial by jury.

## XII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against the Defendant United States of America, as follows:

1. For general damages according to proof;
2. For medical and related expenses, according to proof;
3. For lost earnings, past and future;
4. For total money damages in the amount of $2,500,000.00. s
5. For costs of suit incurred herein;
6. For interest, as allowed by law; and
7. For such other and further relief as the Court may deem proper.

WHEREFORE, Plaintiff prays judgment against the Defendant THE GEO GROUP INC. AND THE JOHN DOE DEFENDANTS, as follows:

1. For general damages according to proof;

2. For medical and related expenses, according to proof;

3. For lost earnings, past and future;

4. For total money damages in the amount of $2,500,000.00.

5. For Punitive Damages in an amount to be determined at Trial.

6. For costs of suit incurred herein;

7. For interest, as allowed by law;

8. For such other and further relief as the Court may deem proper.

DATED: October 9, 2012          FELDMAN & WALLACH

By: Jason Feldman, Esq.
Ian Wallach, Esq.
Attorneys for Plaintiff